UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

**CHAMBERS OF**
**CHARLES D. AUSTIN**
**UNITED STATES MAGISTRATE JUDGE**

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

March 22, 2024

LETTER TO ALL COUNSEL OF RECORD

Re:  *Marcy L. v. Martin O'Malley, Commissioner, Social Security Administration*[1]
     Civil No. 23-0583-CDA

Dear Counsel:

On March 3, 2023, Plaintiff Marcy L. ("Plaintiff") petitioned this Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny Plaintiff's claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023). I have considered the record in this case (ECF 8) and the parties' briefs (ECFs 11, 15 & 16). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will AFFIRM the Commissioner's decision. This letter explains why.

## I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") on November 23, 2015, alleging a disability onset of August 31, 2014. Tr. 142–48. Plaintiff's claims were denied initially and on reconsideration. Tr. 78–90. On May 31, 2018, an Administrative Law Judge ("ALJ") held a hearing. Tr. 27–50. Following the hearing, on October 2, 2018, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 10–26. The Appeals Council denied Plaintiff's request for review of the decision. Tr. 1–6.

On October 17, 2019, Plaintiff petitioned this Court for review, and on March 31, 2021, the Court remanded Plaintiff's case to the SSA. Tr. 672–684. The Appeals Council, on January 14, 2022, vacated the ALJ's decision and remanded the case to an ALJ for further proceedings. Tr. 685–689. A different ALJ heard Plaintiff's case on October 26, 2022, and determined Plaintiff was not disabled within the meaning of the Social Security Act on December 20, 2022. Tr. 600–

---

[1] Plaintiff filed this case against Kilolo Kijakazi, the Acting Commissioner of Social Security, on March 3, 2023. ECF 1. Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Accordingly, Commissioner O'Malley has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

623. That decision constitutes the final, reviewable decision of the SSA. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 20 C.F.R. § 422.210(a).

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

Here, at step one, the ALJ determined that Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of August 31, 2014 through her date last insured of September 30, 2016[.]" Tr. 606. At step two, the ALJ found that Plaintiff suffered from the severe impairments of "anxiety disorder, major depressive disorder, and posttraumatic stress disorder (PTSD)[.]" Tr. 606. The ALJ also determined that Plaintiff suffered from the non-severe impairments of cervical spine impairment, headaches, and migraines. Tr. 606–608. At step three, the ALJ determined that Plaintiff "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 609. Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except frequently crawl and climb ladders/ropes/scaffolds; frequent exposure to vibrations; "moderate" noise intensity level (defined in the SCO as business office with typewriters in use; department store, grocery store, light traffic, and fast food restaurant at off-hours); simple, routine tasks; no interaction with the general public; occasional interaction with coworkers and no tandem work assignments; occasional interaction with supervisors; occasional workplace changes; and occasional independent decision making.

Tr. 610. The ALJ determined that Plaintiff was unable to perform past relevant work as a cashier (DOT[3] #211.462-010) and as a medical technician (DOT #355.674-014), but could perform other

---

[3] The "DOT" is the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles . . .* , are [SSA] resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations. U.S. Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991); U.S. Dep't of Labor, *Selected Characteristics of*

jobs that existed in significant numbers in the national economy. Tr. 614–15. Therefore, the ALJ concluded that Plaintiff was not disabled. Tr. 617.

### III.  LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, my review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g.*, *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.  ANALYSIS

Plaintiff raises one argument on appeal, specifically that the ALJ's evaluation of Plaintiff's moderate limitation with maintaining concentration, persistence, or pace ("CPP") strays from the legal framework set forth in *Mascio v. Colvin*. ECF 11, at 7; 780 F.3d 632 (4th Cir. 2015). Plaintiff contends that the ALJ's determination is unsupported by substantial evidence preventing this Court from making a proper review. ECF 11, at 4. Defendant counters that substantial evidence supports the ALJ's RFC finding, thus supporting the ALJ's final determination. ECF 15, at 7.

When a claimant possesses a mental impairment, an ALJ is required to make "'a specific finding as to the degree of limitation in each of' the four areas of functional limitation listed in [20 C.F.R.] § 404.1520a(c)(3)." *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017) (quoting 20 C.F.R. § 404.1520a(e)(4)). One of these four areas, CPP, concerns "the abilit[y] to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). A "moderate" limitation in CPP means that a claimant's ability to sustain CPP "independently, appropriately, effectively, and on a sustained basis is fair." *Id.* § 12.00(F)(2)(c).

Specific to a limitation in the functional area of CPP, an ALJ must then expressly account for such limitation, or explain why no limitation exists, in the function-by-function analysis. *Mascio*, 780 F. 3d at 638; *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). An ALJ may not account for a claimant's moderate CPP limitations by restricting the RFC to simple, routine tasks or unskilled work without explaining why such provisions adequately address the claimant's CPP limitations. *See Mascio*, 780 F.3d at 638; *Shinaberry*, 952 F.3d at 121–22. However, an ALJ may

---

*Occupations Defined in the Revised Dictionary of Occupational Titles* (1993)." *Pearson v. Colvin*, 810 F.3d 204, 211 n.1 (4th Cir. 2015).

accommodate a claimant's moderate CPP limitations by assigning persuasive value to a medical opinion that "provide[s] substantial support for" the ALJ's CPP-related RFC provisions. *Sizemore v. Berryhill*, 878 F.3d 72, 81 (4th Cir. 2017). Therefore, where an ALJ finds that a "plaintiff [i]s moderately limited in CPP, the ALJ must account for those limitations in the RFC or explain how [the] plaintiff could maintain CPP while performing simple, routine tasks." *Everlena G. v. Kijakazi*, No. DLB-20-0784, 2021 WL 3912277, at *3 (D. Md. Sept. 1, 2021).

Here, at step three, the ALJ observed that in Plaintiff's function report, she "admitted she could count change . . . [and] acknowledged that she could handle a bank account herself if needed." Tr. 610. The ALJ accounted for Plaintiff's testimony when she stated that, during the relevant time period, she maintained a job where she cleaned two times a week for up to four hours. Tr. 611. The ALJ noted that Plaintiff performed "janitorial-type work of cleaning in an office setting, and she had started cleaning at multiple properties, but was now down to one property because of panic attacks." *Id.* Plaintiff's job tasks included "emptying trash, vacuuming, taking out the trash, and cleaning bathrooms." *Id.* However, the ALJ took note of Plaintiff's testimony that she "could only pay attention for a few minutes at a time, she did not finish what she started, and she did not handle stress or changes in routine well[.]" Tr. 610. The ALJ also mentioned that Plaintiff testified to having "panic attacks and poor sleep due to nightmares," and she "noted medication side effects of fatigue." Tr. 611.

The ALJ examined the psychiatric evaluation conducted in August of 2014 where Plaintiff "had a calm mood, appropriate affect, logical thought process, normal speech and psychomotor activity, cooperative behavior, and neat and groomed appearance, despite being easily distracted." Tr. 612. In Plaintiff's regular psychiatric visits from March 2016 through September 2016, Plaintiff "noted only rare problems with concentration." *Id.* Throughout those examinations Plaintiff had normal "attention, concentration, thought process, orientation, recent and remote memory, and associations, despite having anxious or depressed moods, fair judgement and insight, and some noted tearfulness." *Id.* Plaintiff was diagnosed with recurrent major depressive disorder, generalized anxiety disorder, and PTSD, whereas she was treated with various medications. *Id.*

Following Plaintiff's date of last insured in September of 2016, the ALJ discussed Plaintiff's continued psychiatric treatment that continued through October of 2022. Tr. 613. Plaintiff's "signs were unchanged from her prior visits" but had "several instances of distractable attention with poor concentration; and rare circumstantial thoughts." *Id.* Due to this, Plaintiff was treated with different "combinations of medications" and attended "occasional individual therapy during this period." *Id.* The ALJ then summarized during the period at issue, that Plaintiff endorsed, among other things, mental symptoms affecting her concentration. *Id.* However, over the course of her treatment, Plaintiff had mixed signs on examination varying from normal concentration to easily distracted. *Id.* The ALJ "balanced [Plaintiff's] mental complaints against her largely normal mental signs on exams, aside from some . . . concentration deficits, and against her conservative treatment [with] psychotropic medications," supporting the ALJ's decision to limit Plaintiff to "unskilled work overall with additional social interaction, workplace change, and independent decision-making restrictions as outlined in the [RFC]." *Id.* Based upon these observations, the ALJ determined that Plaintiff possessed a "moderate" CPP limitation. Tr. 610.

*Marcy L. v. O'Malley*
Civil No. 23-0583-CDA
March 22, 2024
Page 5

Plaintiff correctly observes that the ALJ "must either include a corresponding limitation in the RFC assessment or explain why no such limitation is necessary." ECF 11, at 8. Contrary to Plaintiff's assertion that "remand is warranted because the ALJ failed to address" Plaintiff's moderate limitation in CPP, the Court finds that the ALJ did not commit harmful error at this step and provided substantial evidence for this Court to review. ECF 11, at 11. The ALJ's reliance on the opinions of multiple state psychologist sources when crafting the RFC provided ample support for the CPP limitations incorporated therein, thus enabling the Court to perform meaningful review.

On March 10, 2016, the state agency psychologist, Dr. Judith E. Meyers, concluded that Plaintiff had "moderate limitations" regarding difficulties in maintaining CPP "with no episodes of decompensation of extended duration." Tr. 613. Dr. Meyers limited Plaintiff to "understanding and retaining simple instructions with persisting at simple tasks and that she would function best at task with little to no social demands for communicating with others." *Id.* Dr. Meyers found the following: Plaintiff would "[n]eed reminders for [her] medication, [her] husband manage[d the] money, but [she] is able [to manage money], just never had to, watches TV, [has] difficult[ies] with memory, completing tasks, concentration, understanding and following instructions [as reported by Plaintiff]." Tr. 55. Dr. Meyers explained in narrative form that the evidence suggested Plaintiff had "the capacity to persist at simple tasks within physical tolerances." Tr. 58. The ALJ noted that Dr. Meyers supported these limitations by evaluating Plaintiff's "normal mood, affect and thought process on exams with some easy distraction, mental diagnoses, reported activities, and positive response to treatment of medications." Tr. 613.

The ALJ then assigned persuasive value to Dr. Yamir Laboy's opinion. Tr. 613. On September 19, 2016, Dr. Laboy also concluded that Plaintiff had moderate limitations sustaining CPP. Tr. 72. Dr. Laboy found Plaintiff to have the same "overall mental restrictions" as those noted by Dr. Meyers. Tr. 613. Dr. Laboy supported this moderate limitation by noting Plaintiff's "overnight hospitalization for accidental prescribed medication overdose, hospitalization for several days to treat drug abuse with other mental diagnoses, some deficits on exams that included tearfulness and a partial response to treatment of medications . . . ." Tr. 613. Both Dr. Laboy and Dr. Meyers opined that Plaintiff "retain[ed] the ability to mentally perform at the level cited and discussed . . . [and that Plaintiff] retain[ed] the ability to perform simple, repetitive tasks, with limited social contact. [Plaintiff can] meet the basic mental demands of work on a sustained basis, despite any limitations resulting from identified [medically determined impairments]." Tr. 59, 73.

When assigning persuasive value to both opinions, the ALJ noted that the medical opinions were "supported by references to the treatment record, including [Plaintiff's] deficits and normal signs on exams, mental diagnoses, reported activities, and positive response to conservative treatment of medications." Tr. 614. While the ALJ found both of the consultants' opinions persuasive, the ALJ noted that, due to findings from Plaintiff's treating providers and from the medical record as a whole, the opinions were consistent but did not "fully account" for Plaintiff's "anxiety complaints with insight and judgement deficits on exams at psychiatric checkups[,] as well as [Plaintiff's] need for individual therapy with goals that included plans to better manage stress[.]" Tr. 614. Accordingly, the ALJ determined that these "factors [were] consistent with

further limiting" Plaintiff and provided additional restrictions "to only occasional workplace changes and only occasional independent decision making." Tr. 614. The ALJ crafted an RFC incorporating the limitations set forth by the two state agency psychologists and additional limitations based upon the ALJ's evaluation of the whole record. Tr. 614.

An ALJ adequately accounts for a Plaintiff's moderate CPP limitations by assigning persuasive value to a source's opinion regarding those limitations and adopting the source's opined limitations into the RFC. *See Sizemore*, 878 F.3d at 80–81 (affirming an ALJ's decision where: (1) the ALJ adopted, without explanation, certain RFC limitations suggested in a medical opinion that provided "detailed findings" on a claimant's "sustained concentration and persistence limitations" and (2) the ALJ assigned persuasive value to the opinion). Therefore, the Court finds that the opinions of Drs. Meyers and Laboy "provided substantial support" for the RFC assessed in this case and that the ALJ's adoption of these opinions permits meaningful review of the ALJ's decision. *Id.* at 81; *see also Onishea v. Barnhart*, 116 F. App'x 1, 2 (5th Cir. 2004) ("The ALJ based his assessment of [the claimant's] RFC, in part, on the state examiner's function-by-function analysis[.] Thus, the ALJ employed the legal standard set forth in . . . SSR 96–8p in determining [the claimant's] RFC.").

Furthermore, Plaintiff's argument that the ALJ ran afoul of *Mascio* is unavailing. In *Mascio*, the ALJ found that the claimant, who suffered from an adjustment disorder, had moderate limitations in concentration, persistence, and pace. *Mascio*, 780 F.3d at 638. But unlike here, the ALJ "ignor[ed] (without explanation) Mascio's moderate limitation in her ability to maintain [CPP]" when he conducted the function-by-function analysis. *Id.* at 633. "[B]ecause the ALJ . . . gave no explanation" for these omissions, "a remand [was] in order." *Id.* at 638. *See Shinaberry*, 952 F.3d at 121 (affirming the ALJ's decision when the ALJ "sufficiently explained why the mental limitation to simple, routine, repetitive tasks accounted for Shinaberry's [mental] disability and her moderate limitations in [CPP]").

The ALJ's reliance on substantial evidence in assessing the RFC permits meaningful review of the ALJ's decision for the reasons explained above. Additionally, Plaintiff identifies no harmful error resulting from the ALJ's failure to provide a narrative discussion explaining the RFC's accommodation of Plaintiff's CPP limitations. *See generally* ECF 11. Nor does Plaintiff identify any RFC provisions that the ALJ should have included in lieu of the provision at issue in this case. *See generally id.* Remand is unwarranted because the Court's review is not "frustrate[d]" by "inadequacies in the ALJ's analysis[.]" *Mascio*, 780 F.3d at 636.

*Marcy L. v. O'Malley*
Civil No. 23-0583-CDA
March 22, 2024
Page 7

## V.  CONCLUSION

For the reasons set forth herein, pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is AFFIRMED.  The clerk is directed to CLOSE this case.  Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion.  A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge